DICKINSON, Justice,
dissenting:
¶ 59. To legally rezone real estate, a board of supervisors must find either a mistake in the original zoning or a change in the character of the neighborhood.[3] The Panola County Board of Supervisors found the latter, and the majority of this Court agrees. But the record contains no evidence of any change in the character of the neighborhood — and the majority has pointed to none — so I must dissent.

No recent commercial expansion.

¶ 60. The only evidence in the record of change in the area — as distinct from change in the character of the area — is that in 2002, a used-car lot opened, and at some point, an existing car dealership added a 1,000-square-foot addition to its building.
¶ 61. Most of the majority’s discussion actually concerns the absence of change. It quotes the circuit court as follows:
The record before the Panola Land Development Commission as well as the Panola County Board of Supervisors is that there are numerous businesses along [Hjighway 6 west from Batesville. Some are industrial; some are commercial. Some are supply companies. Many are related to the retail sale of automobiles. There are lumber supply companies, schools, and private homes, farms as well as others. Therefore, there was ample evidence before the board of heavy industrial business as well as recent industrial and commercial expansions.[4]
¶ 62. The reference to “recent industrial and commercial expansions” is justified (as far as the record is concerned) by no more than the addition of one car dealership and a modest increase in the size of another. The rest of the commercial activity described by the circuit court had existed, unchanged, for quite some time.

No change in the neighborhood’s character.

¶ 63. The majority cites as evidence for change in the neighborhood’s character the following:
*1192 Aldridge provided various maps to the Board. The aerial map showed the location of his property in relation to other landowners. Aldridge discussed the location of current commercial and industrial businesses in relation to his facility. It is evident that the area has a mixture of agricultural, commercial, and industrial uses despite its agricultural zoning. The Board already had granted a special exception in the area to operate a used car lot since the adoption of the ordinance. Indeed, the Board was made aware that Aldridge’s property had been used for a number of years as an industrial business, a concrete plant, prior to its use as a junkyard.... In other words, the Board was familiar with the land at issue and was aware that it had not been used as agricultural land for many years.[5]
¶ 64. As with the circuit court’s findings, I see no evidence of change in character and, indeed, very little of change at all. The first four sentences of the above passage merely describe the status quo at the time of the hearing. The next sentence mentions one of the car dealers. The last two suppoi't my concern: the property’s use had not changed for “a number of years.” “It had not been used as agricultural land for many years.” Perhaps that last sentence shows that the zoning was wrong in the first instance, but that misses the point entirely. This case, the majority correctly holds, does not implicate the mistake clause of the Edwards opinion.[6] The only question before us concerns whether the character of the neighborhood has changed. Based on evidence in the record, it has not.
¶ 65. The majority writes that “[a]t the hearing, Aldridge’s counsel referenced the growth in the area as evidenced by building and occupancy permits.”[7] The record contains no data on how much growth — or how little — had occurred, or of what type. Growth does not necessarily (although it can) cause a neighborhood’s character to change. For instance, the expansion and growth of a small neighborhood into a large neighborhood would not per se indicate a change in character. Here, we have no evidence of the magnitude or the nature of the alleged growth. So we cannot say that it caused a change in character.
¶ 66. The majority may be correct that “the current zoning was problematic for all the businesses along Highway 6, including Aldridge’s property because the agricultural zoning did not coincide with the actual use of the properties.”[8] But while this perhaps could have been grounds for rezoning because of mistake, it provides no evidence of a change in the character of the area.
¶ 67. The record evidence supporting the Board’s decision to rezone does not rise even to the level of a scintilla. Under Edwards, the rezoning was illegal and we should reverse and render. Therefore, I dissent.
WALLER, C.J., JOINS THIS OPINION.

. Edwards v. Harrison County Bd. of Supervisors, 22 So.3d 268, 274 (Miss.2009).

. Maj. Op. at ¶ 32.

. Maj. Op. at ¶ 33.

. Maj. Op. at ¶ 26.

. Maj. Op. at 11 36.

. Maj. Op. at II 34.